# **Exhibit A**

# COMBINED TRANSPORT BILL OF LADING, LONG FORM TERMS AND CONDITIONS:

**1. (Definitions)** When used in this Bill of Lading (A) "Carrier" means OL USA LLC, which operates as a duly licensed and authorized non-vessel operating common carrier ("NVOCC"). (B) "Ocean Carrier" means the vessel operating carrier(s) (including the vessel or her owners) participating in the ocean transportation of the Goods between ports of different countries. (C) "Inland Carrier" means carriers (other than the Carrier or Ocean Carrier) by land, water or air, participating in combined transport of the Goods, whether acting as carrier or bailee. (D) "Combined Transport" means carriage of the Goods under this Bill of Lading from place of receipt from Merchant to place of delivery to Merchant by the Carrier and Ocean Carrier plus one or more Inland Carriers. (E) "Port-to-Port Transportation" means carriage of the Goods under this Bill of Lading other than combined transport. (F) "Merchant" includes the shipper, consignor, consignee, owner, and receiver of the Goods and the holder of this Bill of Lading. (G) "Goods" mean the cargo described on the face of this Bill of Lading and, if the cargo is packed into container(s) supplied or furnished by or on behalf of the Merchant, include the container(s) as well. (H) "Vessel" includes the vessel named on the face of this Bill of Lading and any ship, craft, lighter, barge or other means of transport that is substituted in whole or in part for that vessel. (K) "Subcontractor" includes stevedores, longshoremen, lighterers, terminal operators, warehousemen, truckers, agents, servants, and any person, firm, corporation or other legal entity which performs services incidental to the carriage of the Goods.

**2. (Clause Paramount)** The receipt, custody, carriage, and delivery of the Goods shall be governed by the provisions of the Transportation Agreement, which consists of Carrier's tariff, and the terms and conditions stated on the front and back of this bill of lading. Additionally, all carriage under this Bill of Lading to or from the United States shall be performed subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, 46 App. U.S.C. § 1300 et. seq. ("COGSA"). Except to the extent the preceding sentence applies, all other carriage shall be governed by the law of any country involved in the carriage making the Hague Rules or Hague-Visby Rules compulsorily applicable to this Bill of Lading or, if there be no such law, in accordance with the Hague Rules, unless some other national law or treaty is mandatorily applicable. The provisions of applicable law as set forth above shall also apply to carriage of goods by Inland Carriers, including inland waterway. Except as may be otherwise specifically provided herein, said law shall govern before the Goods are loaded on and after they are discharged from the vessel whether the Goods are carried on deck or under deck and throughout the entire time the Goods subject to this Bill of Lading.

**3. (Law and Jurisdiction)** This contract is to be governed by the laws of the state of NEW YORK with the exception of its conflict of laws principles. All disputes arising from the shipment to which this bill of lading pertains may only be instituted in a court of appropriate jurisdiction located in the state of NEW YORK. Merchant and Carrier each agree that they are subject to the personal jurisdiction of all state and federal courts located in the state of NEW YORK.

**4. (Sub-Contracting)** Exemptions and Immunities of Subcontractors (A) The Carrier shall be entitled to subcontract on any terms the whole or part of the handling, storage, or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods. (B) Merchant warrants that no claim shall be made against any Subcontractor, except the Ocean Carrier and Inland Carrier, that imposes or attempts to impose upon any of them or any vessel owned or operated by any of them any liability in connection with the Goods, and, if any such claims should nevertheless be made, to indemnify the Carrier against all consequences of such claims. (C) Without prejudice to the foregoing, it is expressly agreed that every such Subcontractor (and Subcontractor's Subcontractor) shall be entitled to the same rights, exemptions from liability, defenses and immunities to which Carrier is entitled.

**5. (Basic Liability)**
A. If either or both of the spaces on the front of this bill of lading for "Place of Receipt" or "Place of Delivery" have been completed, this is a Combined Transport bill of lading and paragraphs (b),(c),and (d) shall apply.
B. If this is a Combined Transport bill of lading, the Carrier undertakes to perform and/or arrange for performance of the carriage of the Goods from the Place of Receipt or the Port of Loading, to the Port of Discharge or the Place of Delivery, whichever is applicable and Carrier's liability, unless otherwise provided in this bill of lading, shall be determined in accordance with the provisions of paragraphs 2 and 6.
C. During the period before loading to the vessel at the Port of Loading and after discharge from the vessel at the Port of Discharge, the Carrier shall be entitled to all rights, defenses, immunities, exemptions, limitations of or exonerations from liability, liberties and benefits contained or incorporated in the contract between the Carrier and any person by whom the carriage is performed or undertaken, whether directly or indirectly and who would have been liable to the Shipper or Consignee as if the Shipper or Consignee had contracted directly with such person or contained in any compulsory legislation applicable to such period. In no event shall Carrier's liability under a combined transport bill of lading exceed that determined pursuant to paragraphs 2 and 6.
D. If it cannot be determined at which stage of the carriage the loss or damage occurred, it shall be conclusively presumed to have occurred while the Vessel was at sea and Carrier's liability shall be determined in accordance with paragraphs 2 and 6.

**6. (Compensation for Loss and Damage)**
A. Unless otherwise mandated by compulsorily applicable law, Carrier's liability for compensation for loss of or damage to Goods shall in no case exceed the amount of US$500 per package or per customary freight unit, unless Merchant, with the consent of Carrier, has declared a higher value for the Goods, in the space provided on the front of this Bill of Lading and paid extra freight per Carrier's tariff, in which case such higher value shall be the limit of Carrier's liability. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. Where a container is stuffed by Merchant or on its behalf, and the container is sealed when received by Carrier for shipment, Carrier's liability will be limited to US$500 with respect to the contents of each such container, except when the Merchant declares the value on the face hereof and pays additional charges on such declared value as stated in Carrier's tariff. The freight charged on sealed containers when no higher valuation is declared by the Merchant is based on a value of US$500 per container. Carrier shall not, in any case, be liable for an amount greater than the actual loss to the person entitled to make the claim. Carrier shall have the option of replacing lost Goods or repairing damaged Goods.
B. In any case where Carrier's liability for compensation may exceed the amounts set forth in Section 6A above, compensation shall be calculated by reference to the value of the Goods, according to their current market price, at the time and place they are delivered, or should have been delivered, in accordance with this contract.
C. If the value of the Goods is less than US$500 per package or per customary freight unit, their value for compensation purposes shall be deemed to be the invoice value, plus freight and insurance, if paid.
D. In the event that it is held that the Carmack Amendment applies to any part of the movement of the Goods notwithstanding the provisions of the Transportation Agreement to the contrary, recovery for loss of or damage to Goods shall be limited to U.S. $.50 per pound unless a higher value is declared by Shipper and a supplementary charge paid.
E. Carrier shall not be liable to any extent for any loss of or damage to or in connection with precious metals, stones, or chemicals, jewelry, currency, negotiable instruments, securities, writings, documents, works of art, curios, heirlooms, or any other valuable Goods, including Goods having particular value only for Merchant, unless the true nature and value of the Goods have been declared in writing by Merchant before receipt of the Goods by the Carrier or Inland Carrier, the same is inserted on the face of this Bill of Lading and additional freight has been paid as required.
F. Merchant understands that Carrier is not engaged in the business of insurance and that by declaring value in accordance with the provisions hereof, it is not obtaining insurance. If Merchant wishes to purchase cargo insurance to cover goods moving under this Bill of Lading, it must purchase such insurance through a third party.

**7. (Route to Transport)** The Goods may, at the Carrier's absolute discretion, be carried as a single shipment or as several shipments by the Vessel and/or any other means of transport by land, water, or air and by any route whatsoever. (B) The Vessel shall have liberty to call and/or stay at any port or place in or out of the direct, advertised, or customary route, and/or to omit calling at any port or place whether scheduled or not. (C) If the Goods in whole or in part are for any reason not carried on the Vessel named in this Bill of Lading, or if loading the Goods is delayed or is likely to detain the Vessel, the Vessel may proceed without carrying or loading the Goods in whole or in part, and notice to Merchant of such sailing is hereby waived. (D) Any action taken by the Carrier under this Article shall be deemed to be included within the contractual carriage and such action, or delay resulting therefrom, shall not be considered a deviation.

**8. (Liberties)** (A) In any situation whatsoever, no matter how or when caused, which in the judgment of the Carrier (including for the purpose of this Section the Ocean Carrier, Master and any person charged with the transport or safekeeping of the Goods) has given or is likely to give rise to danger, injury, loss, delay, or disadvantage of whatsoever nature, the Carrier may refuse to or discontinue transport the Goods or take any action which is necessary or advisable in the sole discretion of Carrier, including, but not limited to, terminating the transportation of the Goods and tendering them to a third party carrier or warehouseman at the expense of Merchant. The Merchant shall reimburse the Carrier forthwith upon demand for all extra freight charges and expenses incurred for any actions taken according to subsection (A), including delay or expense to the Vessel, and the Carrier shall have a lien upon the Goods to that extent. (B) The Carrier, in addition to all other liberties provided for in this Section, shall have liberty to comply with orders, directions, regulations or suggestions as to navigation or the carriage or handling of the Goods or the Vessel howsoever given, by any actual or purported government or public authority, or by any committee or person having under the terms of any insurance on the Vessel, the right to give such order, direction, regulation, or suggestion. If by reason of and/or in compliance with any such order, direction, regulation, or suggestion, anything is done or is not done the same shall be deemed to be included within the contractual carriage and shall not be a deviation.

**9. (Description and Particulars of Goods)** Any reference on the face of this Bill of Lading to marks, numbers, description, quantity, quality, gauge, weight, measure, nature, kind, value, and any other particulars of the Goods, is as furnished by the Merchant. The Merchant warrants to the Carrier that the descriptions and particulars furnished by him are correct, and the Merchant shall indemnify the Carrier against all loss, damage, expenses, liability, penalties and fines arising or resulting from inaccuracy of any description or particular, including any fines, penalties, or liquidated damages assessed by any customs service.

**10. (Use of Container)** When the Goods are not already packed into a container at the time of receipt by the Carrier, the Carrier shall be at liberty to pack and carry the Goods in any type of container.

**11. (Carrier's Container)** (A) The Merchant assumes full responsibility for and shall indemnify the Carrier against any loss of or damage to the Carrier's containers and other equipment if the loss or damage is caused or occurs while in the possession or control of the Merchant, his agents, or common carriers engaged by or on behalf of the Merchant (B) The Carrier shall in no event be liable for, and the Merchant shall indemnify and hold the Carrier harmless from, any death of or injuries to persons, or loss of or damage to property, caused by the Carrier's container or its contents while in the possession or control of the Merchant, his agents, or common carriers engaged by or on behalf of the Merchant.

**12. (Merchant Load and Count)** If the Goods received by the Ocean or Inland Carrier are in a container packed by or on behalf of the Merchant (A) this Bill of Lading is prima facie evidence of the receipt only of the number of containers on the face of this Bill of Lading. The condition and particulars of the contents are unknown to the Ocean Carrier and Inland Carrier, and the Carrier accepts no responsibility for the accuracy of the description of condition or particulars. (B) The Merchant and not the Carrier shall be responsible for, and the Merchant shall indemnify and hold Carrier harmless from, any resulting loss or damage to persons or property (including the Goods) (C) If the container is delivered after transport by the Ocean Carrier or Inland Carrier with seals intact, such delivery shall be deemed to be full and complete performance of the Carrier's obligation under this Bill of Lading, and the Carrier shall not be liable for any loss of or damage to the contents of the container. (D) If any seal of the container is broken by customs or other authorities for inspection of its contents, the Carrier shall not be liable for any resulting loss, damage or expenses.

**13. (Special Carriage or Container)** (A) The Carrier does not undertake to carry the Goods in refrigerated, heated, insulated, ventilated, or any other special hold or container. The Carrier will treat such Goods or container only as ordinary goods or dry container, respectively, unless: (1) special arrangements for the carriage of such Goods or container have been agreed to in writing between the Carrier and the Merchant; (2) such special arrangements are noted on the face of this Bill of Lading; and (3) special freight charges as required have been paid. The Carrier shall not be responsible for the function of a special container supplied by or on behalf of the Merchant. (B) The Carrier shall not be liable for any loss of or damage to Goods in a special hold or container arising from latent defects, breakdown, or stoppage of the refrigeration or heating machinery, insulation, ship's plant, or other such apparatus of the Vessel or container. (C) If the Goods received by the Ocean Carrier or Inland Carrier is in a refrigerated container packed by or on behalf of the Merchant, it is the obligation of the Merchant to stow the contents properly and set the thermostatic controls exactly. The Carrier shall not be liable for the Merchant's failure in such obligation.

**14. (Dangerous Goods, Contraband)** (A) The Carrier undertakes to carry Goods of an explosive, inflammable, radioactive, corrosive, damaging, poisonous, or dangerous nature only upon the Carrier's approval of a written application by the Merchant prior to the carriage of such Goods. Such application must accurately state the name, nature and classification of the Goods, as well as how they are dangerous and the method of rendering them innocuous, together with the full names and addresses of the Merchant and the consignee. (B) The Merchant shall ensure that the nature and danger of such Goods is distinctly and permanently marked on the outside of the package or container containing the Goods. (C) Merchant shall submit all documents or certificates required in connection with such Goods by any applicable statue or regulation or by the Carrier (D) Whenever the Goods are discovered to have been received by the Ocean Carrier or Inland Carrier without complying with subsections (A), (B) or (C) above, or the Goods are found to be contraband or prohibited by any law or regulation of any place during the transport, the Carrier, Ocean Carrier, Inland Carrier, or Subcontractor shall be entitled to take any action it deems necessary or advisable in its sole discretion, and the Merchant shall be liable for and indemnify the Carrier against any loss, damage or liability, including loss of freight, and any other expenses directly or indirectly arising out of custody or carriage of such Goods.

**15 (Stowage Under and on Deck)** (A) Goods in containers, vans, trailers, or chassis may be carried under deck or on deck, and when such Goods are carried on the deck Carrier shall not be required to specially note mark, or stamp any statement of "on deck stowage" on the face of this Bill of Lading, any custom to the contrary notwithstanding. Such on deck carriage shall not be considered a deviation. (B) In respect to Goods in containers, vans, trailers, or portable tanks carried on deck, neither Ocean Carrier nor Carrier shall be liable for loss or damage caused by water incursion or other perils incident to on deck carriage. (C) In respect of Goods not in containers and carried on deck, and stated on this Bill of Lading to be so carried, all risks of loss or damage from perils inherent in or incident to the custody or carriage of such Goods shall be borne by the Merchant and in all other respects the Carrier shall have the benefit of the provisions of the applicable, version of the Hague Rules (including COGSA, 46 U.S.C. Section 1301 (c)) and the terms of this Bill of Lading.

**16. (Heavy Lift)** (A) The weight of a single piece or package exceeding 2,240 lbs. gross must be declared by the Merchant in writing before receipt by the Ocean Carrier or Inland Carrier and must be marked clearly and durably on the outside of the piece or package in letters and figures not less than two inches high. (B) If the Merchant fails in his obligations under the preceding subpart (1) the Carrier shall not be responsible for any loss of or damage to in connection with the Goods. (2) the Merchant shall be liable for resulting loss of or damage to any person or property, and (3) Merchant shall indemnify the Carrier against any resulting loss, damage, or liability suffered by the Carrier.

**17. (Delivery)** (A) The Carrier shall have the right to deliver the Goods at any time at any place designated by the Carrier, within the geographic limits of the port of discharge or place of delivery shown of the face of this Bill of Lading (B) Unless otherwise set forth herein, the Carrier's responsibility shall cease when the Goods have been delivered to the Merchant, Inland Carrier, connecting carrier, or any other person entitled to receive the Goods on Merchant's behalf at the Place designated. Delivery of the Goods to the custody of customs or any other public authority shall constitute final discharge of the Carrier's responsibility. (C) If the Goods are consigned "to order" on the face hereof, the Goods shall be delivered at the Port of Discharge or Place of Delivery, if indicated, upon surrender of the original bill of lading; provided however, if the Goods are to be transshipped via a connecting carrier to a destination point beyond the Port of Discharge or Place of Delivery, if indicated, Carrier may, on behalf of the Shipper and Consignee and acting solely as their agent, arrange for such beyond carriage consistent with instructions received from the Shipper or Consignee, or the representative of either of them, at the risk and expense of the Goods. In such event, Carrier may deliver the Goods to the connecting carrier without surrender of the original, properly endorsed bill of lading, unless instructed otherwise, and shall obtain the connecting carrier's acknowledgment that delivery of the Goods shall be made only upon surrender of Carrier's original, properly endorsed bill of lading.

**18. (Fire)** The Carrier shall not be responsible for any loss of or damage to the Goods arising from fire occurring at any time, even though before loading on or after discharge from the Vessel, unless caused by the actual fault or privity of the Carrier.

**19. (Lien)** (A) The Carrier shall have a general lien on and security interest in the Goods (and documents relating thereto) in its actual or constructive possession, custody or control, or en route, which shall survive delivery, for all freight, dead freight, demurrage, damages, loss, charges, expenses, and any other sums (including costs, customs fees, attorney fees, and other fees for recovering the sums) chargeable to the Merchant under this Bill of Lading and any preliminary contract for custody or carriage of the Goods as well as for all previously unsatisfied debts of Merchant under any other Bill of Lading, contract, or undertaking to which Merchant was party or otherwise involved. Carrier may foreclose the lien by selling the Goods without notice to the Merchant privately or by public auction. If on sale of the Goods the proceeds fail to cover all amounts due and owing to Carrier and the costs and fees incurred, the Carrier shall be entitled to recover the deficit from the Merchant. (B) If the Goods are unclaimed during a reasonable time, or whenever in the Carrier's opinion the Goods will become deteriorated, decayed or worthless, the Carrier (without responsibility to it) may at its discretion and subject to its lien, sell, abandon, or otherwise dispose of such Goods at the sole risk and expense of the Merchant.

**20. (Freight and Charges)** (A) Freight shall be calculated and due in accordance with Carrier's Tariff, this bill of lading, and may be calculated on the basis of the particulars of the Goods furnished by the Merchant, but the Carrier for the purpose of ascertaining the actual particulars may at any time and at the risk and expense of the Merchant open the container or package and examine contents, weight, measure, and value of the Goods. In case of incorrect declaration of the contents, weight, measure and or value of the Goods, the Merchant shall be liable for and bound to pay to the Carrier: (1) the balance of freight between the freight charged and that which would have been due had the correct details been given, plus (2) expenses incurred in determining the correct details, plus (3) as liquidated ascertained damages, an additional sum equal to the correct freight. (B) Full freight shall be considered earned on receipt of the Goods by the Carrier. The Carrier shall be entitled to all freight and other charges due hereunder, and to receive and retain such freight and charges under any circumstances, whether the Vessel and/or the Goods be lost, damaged, or not. (C) The Payment of freight and/or charges shall be made in full and in cash without any offset, counter claim, or deduction. (D) The Merchant shall be liable for and shall indemnify the Carrier against: (1) all dues, duties, taxes, consular fees, and other charges levied on the Goods, and (2) all fines, damages and losses sustained by the Carrier in connection with Goods, howsoever caused, including the Merchant's failure to comply with laws and regulations of any public authority in connection with the Goods, or failure to procure consular, Board of Health, or other certificates to accompany the Goods. The Merchant shall be liable for return freight and charges on any Goods refused exportation or importation by any public authority. (E) The shipper, consignor, consignee, owner of the Goods and holder of this Bill of Lading shall be jointly and severally liable to the Carrier for the payment of all freight and charges and for the performance of the obligations of any of them under this Bill of Lading.

**21. (Notice of Claim and Time for Suit against Carrier)** The Carrier shall be discharged from all liability in respect of the Goods, including without limitation non-delivery, misdelivery, delay, loss, or damage, unless suit has been brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

**22. (General Average)** General average shall be adjusted, stated and settled at any port or place as the Carrier's option and according to the York-Antwerp Rules, 1994, except Rule XXII thereof, at such port or place in the United States as may be selected by the Carrier. The general average statement shall be prepared by the adjusters appointed by the Carrier. In such adjustment, disbursements in foreign currencies shall be exchanged into legal tender of the United States at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the Vessel. A general average guarantee and/or bond and such additional security as may be required by Carrier must be furnished before delivery of the Goods. Such cash deposit as Carrier may deem sufficient as additional security for the contribution of the Goods and for any salvage and special charges thereon shall, without prejudice to the ultimate liability of the parties, be made by the Goods, the Shipper or Consignee to Carrier before delivery. Such deposits shall, at the option of Carrier, be payable in legal tender of the United States and be remitted to the general average adjuster. When so remitted, the deposit shall be held in a special account for the purpose of adjustment in the names of the adjuster pending settlement of the general average, and refunds or credit balances, if any, shall be paid in legal tender of the United States.

In the event of accident, danger, damage, or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, Carrier is not responsible to the Goods, to the Shipper or to the Consignee by statute, contract, or otherwise, the Goods, the Shipper and Consignee shall contribute with Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the Goods.

**23. (Both to Blame Collision)** If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect, or default of the Master, mariner, pilot, or servants of the owner of the Vessel in the navigation or in the management of the Vessel, the Merchant shall indemnify the Carrier against all loss or liability which might be incurred directly or indirectly to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of or damage to its Goods or any claim whatsoever of the Merchant paid or payable by the other or non-carrying ship or her owners to the Merchant and set-off, recouped, or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying Vessel or its owner. The foregoing provisions shall also apply where the owners, operators, or those in charge of any ship or ships or objects other than, or in addition to the colliding ships or objects are at fault in respect of a collision, contact, stranding or other accident.

**24. (Intermodal Transportation)** (A) This Bill of Lading may be issued for intermodal transportation in any country. When so issued as between the Merchant and an Inland Carrier custody and carriage of the Goods by the Inland Carrier are subject to the relevant laws, regulations, tariffs and bill of lading conditions. Such tariffs and bills of lading are available from the Ocean Carrier or Inland Carrier upon request. (B) Claims by the Merchant against an Inland Carrier for loss or damage shall be given and suit commenced as provided in the Inland Carrier's applicable bill of lading

**25. (Carrier's Tariff)** This Bill of Lading is subject to the Carrier's applicable tariff. Copies of the applicable tariff are obtainable from the Carrier upon request.

**26. (Severability of Terms)** The terms of this Bill of Lading are severable and if any part or term is declared invalid or unenforceable, the validity or enforceability, of any other part or term shall not be affected.

**27. (Himalaya Clause)** All exceptions, exemptions, defenses, immunities, limitations on liability, privileges and conditions granted or provided by this Bill of Lading or by applicable tariff or by statute or for the benefit of the Carrier shall also apply to and for the benefit of the officers and employees of the Carrier and the agents, officers and crew of the Vessel and to and for the benefit of all parties performing services in connection with the Goods as agents or contractors of the Carrier (including, without limitation, stevedores, terminal operators, Ocean Carrier, Inland Carrier, and agents) and the employees of each them..